**Opinion issued February 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00289-CR

———————————

**EMANUEL FONTENOT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Criminal District Court**
**Jefferson County, Texas\***
**Trial Court Case No. 09-08011**

---

## MEMORANDUM OPINION

Appellant Emanuel Fontenot pleaded guilty to forging a check. *See* TEX.

PENAL CODE ANN. § 32.21 (West 2011). Pursuant to an agreed recommendation,

---

\*    Pursuant to its docket equalization authority, the Supreme Court of Texas transferred the appeal to this Court. *See* Misc. Docket No. 13–9008 (Tex. Jan. 17, 2013); *see also* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases).

the court deferred adjudication and placed Fontenot on community supervision for five years. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5 (West 2006). The State, in a subsequent motion to revoke community supervision, alleged that Fontenot committed four violations of the conditions of his probation. After a hearing, the trial judge found all four violations true, revoked community supervision, and entered judgment sentencing Fontenot to two years in state jail.

In three appellate issues, Fontenot argues that the State's written motion to revoke gave an impermissibly vague description of one of the violations, that the evidence presented at the hearing was insufficient to prove the violations, and that, in particular, the State failed to adduce evidence that his failure to make the court-ordered payments was willful. Because we decide that Fontenot did not preserve error in the trial court as to vagueness in the State's motion to revoke and because we find that the State established the threat to blow up the courthouse by sufficient evidence, we affirm.

## Background

Fontenot cashed a forged check for $498.10 at a grocery store. He was indicted for forgery of a check and pleaded guilty pursuant to an agreement with the State. The trial court deferred adjudication and placed him on community supervision for five years.

On an October morning approximately two years after his guilty plea, Fontenot called the Jefferson County courthouse seeking information about a friend's case. According to Fontenot, the friend's bondsman had mistakenly "dropped his bond" for failure to appear in court. Fontenot spoke several times that morning with personnel of Jefferson County Court at Law No. 2, and he became frustrated.

After his latest call was disconnected, Fontenot called again and reached a receptionist who was responsible for answering the phone and transferring calls at the Jefferson County Courthouse. Fontenot asked "if there was anyone in County Court at Law No. 2," to which the receptionist replied that she had no way of knowing and could only transfer his call. Fontenot then said, "They are going to make me come up there and blow up the courthouse." The receptionist reacted by writing down the number that appeared on her phone and ending the call. She next contacted the sheriff's department to explain what had happened and reported Fontenot's words to a passing peace officer. The receptionist regarded Fontenot's words as a threat of violence; she felt concerned for the safety of herself and others in the Jefferson County Courthouse.

Fontenot later called back and told the receptionist, "[Y]ou know I'm not going to come down there and do that."

The State moved to revoke community supervision for violation of the following conditions of community supervision:

**Condition (1):** Commit no offense against the laws of this State or of any other State or of the United States

**Condition (14):** Probationer will dress appropriately and conduct himself/herself in a courteous and professional manner at all times, especially when interacting with court officers and staff, probation officers and staff, law enforcement officers, and attorneys.

**Condition (22):** Pay the amounts shown in the manner set out: FINE $-0; SUPERVISION FEES $66.00 mo.; COURT COSTS $-0; PSI FEE $350.00; ATTORNEY FEE $1,000.00; CRIME STOPPERS $50.00; RESTITUTION $498.10

The State alleged four violations in its written motion to revoke:

1). The said EMMANUEL FONTENOT has failed to dress appropriately and conduct himself in a courteous an[d] professional manner at all times, especially when interacting with court officers and staff, probation officers and staff, law enforcement officers and attorneys, to wit: by making a terroristic threat to a court employee, as directed by the Court, in violation of Condition (14) of Defendant's Deferred Adjudication order.

2). The said EMMANUEL FONTENOT has failed to pay court assessed fees as directed by the Court and as of November 2, 2012 was $2000.00 in arrears, in violation of Condition (22) of Defendant's Deferred Adjudication order.

3). The said EMMANUEL FONTENOT committed the offense of TERRORISTIC THREAT, in that on or about the 16th day of October, 2012, in the County of Jefferson, State of Texas, the said EMMANUEL FONTENOT did then and there unlawfully and with intent to influence the conduct or activities of JEFFERSON COUNTY, a political subdivision of the state of Texas, threaten to commit an offense involving violence to

4

persons and property, to-wit: to blow up the Jefferson County Courthouse, against the peace and dignity of the State, in violation of Condition (1) of Defendant's Deferred Adjudication order.

4). The said EMMANUEL FONTENOT has failed to pay court assessed fees as directed by the Court and as of January 2, 2013 was $2,180.00 in arrears, in violation of Condition (22) of Defendant's Deferred Adjudication order.

Fontenot pleaded true to violations two and four, relating to the nonpayment of fees, but he denied the others. After a hearing at which an investigating officer, the receptionist, and Fontenot testified, the trial court found all four allegations true, revoked probation, and entered a judgment of conviction. This appeal followed.

## Analysis

Fontenot offers three arguments to show that the trial court abused its discretion in revoking community supervision. He contends that (1) the State's first accusation ("failed to . . . conduct himself . . . in a courteous manner") in its motion to revoke community supervision was too imprecise to give him the notice required by constitutional guaranties of due process and due course of law, (2) the State did not present sufficient evidence to prove that he committed the threat alleged in violations one and three, and (3) the State did not present any evidence that his failure to pay fees was willful, a showing essential to revocation pursuant to violations two and four.

We review a trial court's order revoking community supervision solely for abuse of discretion. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006). We will sustain the trial court's action so long as one violation was properly established. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).

## I. Preservation of error

At the revocation hearing, Fontenot did not object to the description of the first violation in the motion to revoke. This omission is now fatal to his argument on appeal. *See Martinez v. State*, 493 S.W.2d 954, 955 (Tex. Crim. App. 1973). "[U]nlike an indictment or information, a motion to revoke probation is not essential to the trial court's jurisdiction . . . ." *Crawford v. State*, 624 S.W.2d 906, 907 (Tex. Crim. App. 1981). Accordingly, "the question of the sufficiency of a motion to revoke probation cannot be raised for the first time on appeal, even though the motion is in fact defective." *Marcum v. State*, 983 S.W.2d 762, 767 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (citing *Rodriguez v. State*, 951 S.W.2d 199, 204 (Tex. App.—Corpus Christi 1997, no pet.)). We overrule Fontenot's first issue.

## II. Sufficiency of the evidence

Fontenot argues that the evidence is insufficient to sustain the trial court's findings that he committed violations one and three. He relies upon his own

testimony that he actually said, "they are going to make me go up there and blow up *in* that courthouse," and that his statement was directed to a niece who was standing beside him at home. He also argues that even if he had said "blow up the courthouse," he did not utter his words sincerely, as he explained his conduct to law enforcement and on the witness stand. Finally, Fontenot argues that there is no evidence that he intended "to influence the conduct or activities of JEFFERSON COUNTY" as described by the third violation alleged in the motion to revoke.

"[A]n order revoking probation must be supported by a preponderance of the evidence; in other words, that greater weight of credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Rickels*, 202 S.W.3d at 763–64. "[T]he trial judge is the sole judge of the credibility of the witnesses and the weight to be given to their testimony." *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). "When the State has failed to meet its burden of proof, the trial judge abuses his discretion in issuing an order to revoke probation." *Cardona v. State*, 665 S.W.2d 492, 493–94 (Tex. Crim. App. 1984); *accord Hacker*, 389 S.W.3d at 865.

In *Hacker*, the Court of Criminal Appeals discussed at length challenges to the legal sufficiency of the evidence at a revocation hearing. *See* 389 S.W.3d at 864–66. To augment its analysis, the Court drew from decisions of the Supreme Court of Texas that defined legally sufficient evidence in the context of civil trials.

7

*See id.* at 865, 874. Evidence is legally sufficient when it is "more than a scintilla" but not when "the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence." *Id.* at 865 (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 532 (Tex. 2010)). Stated another way, if a "finder of fact must 'guess whether a vital fact exists,'" the evidence is legally insufficient. *Id.* (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005)).

Insofar as Fontenot relies on his avowals that he actually was telling his niece he would "blow up *in* that courthouse" or that his words were not serious, his arguments ask us to usurp the role of the trial judge by reexamining the credibility of the witnesses and reweighing the evidence. *See Hacker*, 389 S.W.3d at 865. The trial judge could have assessed Fontenot's credibility and disregard his testimony, instead crediting the receptionist's testimony that she heard Fontenot say, "They are going to make me come up there and blow up the courthouse," that she believed that Fontenot had made a threat, and that she reacted as one who had heard a threat. This evidence was "more than a scintilla" and "more than a suspicion" that Fontenot committed the first violation alleged in the motion to revoke. *See id.*

Fontenot also claimed that none of the evidence showed an intent to influence the conduct or activities of Jefferson County, which was alleged as the

8

third violation. However, this allegation was not essential to the first alleged violation. Even if we were to assume that the reference to "a terroristic threat" in the description of violation one referred to an offense in the Penal Code, the crime of terroristic threat may be committed with a mens rea other than intent to influence the conduct of a unit of government. *See* TEX. PENAL CODE ANN. § 22.07 (West 2011) ("A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury . . . ."). It is thus unnecessary for us to decide whether the evidence was legally sufficient to support the intent element specified in the third allegation. *See Sanchez*, 603 S.W.2d at 871 (holding one sustained violation sufficient to revoke probation). Fontenot's second issue is overruled. Having sustained the trial court's finding as to the first violation, we need not address Fontenot's third issue attacking the lack of evidence at the hearing that his failure to pay sums required of him as a probationer was willful. *See id.*

## Conclusion

We affirm the judgment of the trial court.



Michael Massengale
Justice

Panel consists of Chief Justice Radack, Justices Massengale and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).