

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00027-CR

ROBERT WAYNE NIXON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Marion County, Texas
Trial Court No. F14755

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

Robert Wayne Nixon pled guilty to driving while intoxicated, third or more, was sentenced to ten years' imprisonment, and was ordered to pay a $2,500.00 fine. Pursuant to a plea-bargain agreement with the State, the trial court suspended Nixon's sentence in favor of placing him on community supervision for ten years. The State moved to revoke Nixon's community supervision on the grounds that he failed to comply with the terms and conditions that required him to use an in-home alcohol monitoring device and that he failed to abstain from consuming alcohol. After finding the State's allegations "true," the trial court revoked Nixon's community supervision and reinstated its sentence of ten years' imprisonment and its $2,500.00 fine.

On appeal, Nixon admits that he continued to drink while on community supervision but complains that the trial court erred by revoking his supervision after a "five year and four month failure . . . to monitor Mr. Nixon's alcohol tests," which were conducted by the in-home alcohol monitoring device. Nixon's argument presents no proper legal basis on which to reverse the trial court's judgment. Because sufficient evidence supports the trial court's revocation, we affirm its judgment.

I.      **Factual Background**

In addition to refraining from consuming alcohol, Nixon was required, under the terms and conditions of his community supervision, to install an "[IN-HOM device[] . . . until [he had] completed at least *HALF [HIS] [COMMUNITY SUPERVISION]*." The State's revocation motion alleged that Nixon drank alcohol and "[f]ailed to provide a breath sample when prompted

2

by the [IN-HOM] breath analysis device." At the revocation hearing, Nixon pled "true" to those allegations. After finding Nixon's pleas knowing and voluntary, the trial court accepted them.

Nixon's community supervision officer (CSO), Traci Smith, testified that Nixon lived in Louisiana and reported to a community supervision officer there. Without objection, the State introduced summaries from the "Smart Start IN-HOM" device, which showed that Nixon failed to take 439 requested breath tests and tested positive eighty-one times for alcohol. Smith testified that, in her twenty-five years of employment as a CSO, she had never seen so many violations. Even so, Smith said the Louisiana community supervision department did not report the positive and skipped breath tests because the reports from the device were being sent to "the [justice of the peace] who originally . . . ordered [it] as a condition of bond."

Nixon's wife, April, testified that she was aware Nixon continued to drink "Bud Light" while on community supervision and that he failed to take requested breath tests. April said she did not report Nixon to his CSO because she "was worried that [she] was going to lose him." April asked the trial court for leniency and said Nixon "would have to go to rehab because he [did] have a drinking problem." She added that Nixon had refused her requests to seek help with Alcoholics Anonymous. Nixon's daughter, Jennifer, also said that Nixon drank during her entire childhood and had a continuing drinking problem.

As the last witness, Nixon took the stand, admitted that he was an alcoholic, and affirmed that he had continued to drink while on community supervision. Nixon testified that he had no excuse for the community supervision violations, promised not to drink again, and wished to be continued on community supervision.

After hearing this evidence, the trial court revoked Nixon's community supervision and imposed its original sentence.

## II.     Sufficient Evidence Supports the Decision to Revoke Community Supervision

Nixon argues that the trial court erred by revoking community supervision because his Louisiana CSO "should have interceded early to give Mr. Nixon an opportunity to correct his behavior" but instead waited "five years and four months." We disagree.

At a revocation hearing, "[t]he State must prove by a preponderance of the evidence that a defendant violated the terms [and conditions of community supervision]." *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993). Proof by a preponderance of evidence as to any one of the alleged violations of the conditions of community supervision is sufficient to support a trial court's decision to revoke community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009); *see Marsh v. State*, 343 S.W.3d 475, 479 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980)).

"We review the trial court's decision to revoke community supervision for an abuse of discretion." *Davidson v. State*, 422 S.W.3d 750, 756 (Tex. App.—Texarkana 2013, pet. ref'd) (citing *Meyer v. State*, 366 S.W.3d 728, 729 (Tex. App.—Texarkana 2012, no pet.)). In a revocation hearing, the trial court is the sole trier of the facts and determines the credibility of the witnesses and the weight given to their testimony. *In re T.R.S.*, 115 S.W.3d 318, 321 (Tex. App.—Texarkana 2003, no pet.). A trial court's decision to revoke community supervision and to proceed to adjudication is examined in the light most favorable to the trial court's judgment. *Id.*; *see Davidson*, 422 S.W.3d at 756. "If a single ground for revocation is supported by a

4

preponderance of the evidence and is otherwise valid, then an abuse of discretion is not shown." *Davidson*, 422 S.W.3d at 756.

Nixon makes no argument suggesting that the State's revocation grounds were unproven by a preponderance of the evidence. Here, the record established that Nixon (1) pled "true" to both of the State's revocation allegations, (2) continued to drink during the duration of his community supervision, (3) tested positive eighty-one times for alcohol, and (4) failed to take 439 breath tests requested by the in-home alcohol monitoring device. Because the grounds for revocation were supported by a preponderance of the evidence, we find no abuse of discretion in the trial court's decision to revoke Nixon's community supervision.

## III. Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     May 5, 2023
Date Decided:       May 9, 2023

Do Not Publish